IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:16-CV-516-FL

| | | |
|---|---|---|
| SANDRA WILLIAMS, KAREN WISE, SUE ELLEN GARCIA, and TOMAS SECUNDINO, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | ORDER |
| ERFAN IMENI, HASSAN FATHALIZADEH, and IMENI CORPORATION, | ) ) ) ) | |
| Defendants. | ) ) | |

This matter is before the court on defendant Imeni Corporation's motion to dismiss (DE 26) and plaintiffs' partial motion to dismiss. (DE 34). Also before the court is plaintiffs' motion to file amended complaint. (DE 40). In this posture, the issues raised are ripe for ruling. For the following reasons, the court denies defendant's motion to dismiss and grants plaintiffs' partial motion to dismiss. The court also grants plaintiffs' motion to file amended complaint.

## BACKGROUND

Plaintiffs initiated this action on June 24, 2016, asserting claims against defendants under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216 et seq., for violations of minimum wage and overtime provisions. Plaintiffs are former employees of defendants who worked at defendants' Subway restaurant in Goldsboro, North Carolina.

Proceeding pro se, defendants answered plaintiffs' complaint on July 21, 2016. On August 25, 2016, defendant Imeni Corporation ("Imeni Corp."), through counsel, filed an answer to plaintiffs' complaint, which included counterclaims against plaintiffs Williams and Wise.[1] Defendant asserts counterclaims against Williams and Wise for conversion, fraud, unfair and deceptive trade practices, and breach of contract. Defendant also asserts against plaintiff Williams claims for wrongful interference with contract, negligence, gross negligence, abuse of process, and malicious prosecution.

On September 9, 2016, defendant filed the instant motion to dismiss. Defendant Imeni Corp. seeks dismissal of plaintiffs' complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). On October 3, 2016, plaintiffs filed the instant partial motion to dismiss, pursuant to Rule 12(b)(6), seeking to dismiss defendant's counterclaims against Williams and Wise.

Thereafter, plaintiffs filed the instant motion to file amended complaint. The proposed complaint seeks to add claims against defendants for unlawful retaliation under the FLSA and violation of the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1 et seq., in the event the court finds defendants exempt from the FLSA. Defendants filed no response to the motion to amend. In their motion, plaintiffs note that defendants object to addition of a retaliation claim.

---

[1] Where the joint report (DE 22) refers to defense counsel as representing all defendants, the subsequent answer and counterclaim as filed on August 25, 2016, is understood to be filed on behalf of all defendants, despite indications to the contrary. The court reads the joint report as plaintiffs' implicit consent to amendment of answer. Accordingly, the answer, counterclaim, and motion to dismiss is viewed by the court as made on behalf of all defendants.

**STATEMENT OF FACTS**

The facts alleged in the complaint may be summarized as follows.[2] Defendants are in the business of operating a Subway restaurant in Goldsboro, North Carolina. (DE 1 ¶ 79). Defendants Erfan Imeni ("Imeni") and Hassan Fathalizadeh ("Fathalizadeh") co-own defendant Imeni Corp. (Id. ¶¶ 73–74). Plaintiffs are former employees of defendants. Plaintiff Williams was shift leader and shift supervisor at defendants' Subway restaurant, and plaintiffs Wise, Garcia and Secundino were food service workers. (Id. ¶¶ 10, 31, 43, 65). At all relevant times herein, plaintiffs were paid by the hour as non-exempt employees. (Id. ¶¶ 78, 86).

During plaintiffs' terms of employment, defendants routinely deducted hours from plaintiff's paychecks each pay period. (Id. ¶ 33). On average, defendants deducted two to seven hours from plaintiffs each pay period. (Id. ¶ 87). When plaintiffs noticed that their paychecks were inaccurate, Williams confronted Imeni. According to plaintiffs, when Williams confronted Imeni, he told her "that he did not know whose hours he was taking from, but that he was doing it to save money." (Id. ¶ 89). Defendants have also failed to compensate plaintiffs for time they were required to attend mandatory store meetings. (Id. ¶¶ 92–93).

**DISCUSSION**

A.   Standard of Review

   1. Motion to Dismiss

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of the complaint but "does not resolve contests surrounding the facts, the merits of a claim or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A

---

[2]The statement of facts are viewed in the light most favorable to plaintiffs for the purposes of defendants' motion to dismiss. Facts pertinent to plaintiffs' motion to dismiss are discussed further herein.

complaint states a claim if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. V. Twombly, 550 U.S. 544, 570 (2007)). " Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" required to prove the claim. Twombly, 550 U.S. at 556. In evaluating the complaint, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd., v. Consumeraffiars.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction and the plaintiff bears the burden of showing that federal jurisdiction is appropriate when challenged by the defendant. McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Such motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction, apart from the complaint. Bain, 697 F.2d at 1219. Under the former assertion, the moving party contends that the complaint "simply fails to allege facts upon which subject matter jurisdiction can be based." Id. In that case, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." Id. "[T]he facts alleged in the complaint are assumed true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009). When the defendant challenges the factual predicate of subject matter jurisdiction, a court "is to

4

regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). The nonmoving party "must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." Id.

2. Motion to Amend

Leave to amend must be freely given when justice so requires, and will be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile. See Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006). "[T]he grant or denial of an opportunity to amend is within the discretion of the [d]istrict [c]ourt." Foman v. Davis, 371 U.S. 178, 182 (1962).

B. Analysis

1. Defendants' Motion to Dismiss

Under the FLSA, employers "engaged in commerce or in the production of goods for commerce" must pay employees certain minimum wages for each hour worked. 29 U.S.C. §§ 206. Employers are prohibited from employing any employee "for a week longer than forty hours unless such employee receives [overtime] compensation at a rate not less than one and one-half times the regular rate at which [the employee] is [paid]." Id. § 207(a)(1). "Any employer who violates the provision of section . . . 207 of [the FLSA] . . . shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in additional equal amount as liquidated damages . . . ." Id. § 216(b).

5

To state a claim for violation of the FLSA's minimum wage provision, a plaintiff must allege that (1) she is an employee of the defendant; (2) the defendant is "engaged in commerce or in the production of goods for commerce;" and (3) that the defendant failed to compensate her properly for hours worked. 29 U.S.C. § 206(a).

> [T]o make out a plausible overtime claim, a plaintiff must provide sufficient factual allegations to support a reasonable inference that he or she worked more than forty hours in at least one workweek and that his or her employer failed to pay the requisite overtime premium for those overtime hours. Under this standard, plaintiffs seeking to overcome a motion to dismiss must do more than merely allege that they regularly worked in excess of forty hours per week without receiving overtime pay. . . .[H]owever, . . . the standard . . . does not require plaintiffs to identify a particular week in which they worked uncompensated overtime hours.

Hall v. DIRECTV, LLC, 846 F.3d 757, 777 (4th Cir. 2017).

In this case, plaintiffs allege sufficient facts to state a claim for violation of the FLSA. Specifically, plaintiffs allege that, for a particular period, defendants failed to adequately compensate them for all hours worked, including time plaintiffs were required to attend training sessions. Plaintiffs assert that on average, defendants failed to compensate for two to seven hours each pay period. Plaintiffs also assert that defendants failed to compensate them for hours they were required to attend training sessions.[3]

Contrary to defendants' suggestion, plaintiffs need not specify the weeks defendants failed to compensate them or the amounts defendants failed to pay. See Hall, 846 F.3d at 777 ("[T]o state a plausible FLSA . . . claim, plaintiffs must provide sufficient detail about the length and frequency of their unpaid work . . . ."). Plaintiffs also need not specify defendants' exact annual operating revenues. Rather, alleging that defendants have gross revenues in excess of $500,000.00 is

---

[3] Based on the alleged facts, plaintiffs' FLSA claim appears to be premised on violations of FLSA's minimum wage provisions, rather than violations of FLSA's overtime provisions.

sufficient to "raise a reasonable expectation that discovery will reveal" evidence that defendants are covered under the FLSA. Twombly, 550 U.S. at 545. Since the allegations in the complaint are "detailed and informative enough to enable . . . defendant[s] to respond," plaintiffs' claims are not subject to dismissal for failure to state a claim under Rule 12(b)(6). See Chao v. Rivendell Woods, Inc., 415 F.3d 342, 349 (4th Cir. 2005).

In the alternative, defendants contend that plaintiffs' claims should be dismissed for lack of subject matter jurisdiction. Defendants claim that the FLSA's minimum wage and overtime provisions do not apply to them because their annual gross volume of sales does not equal $500,000.00.

This argument, however, is unavailing. Ordinarily, "when the defendant challenges the veracity of the facts underpinning subject matter jurisdiction, the trial court may go beyond the complaint, conduct evidentiary proceedings, and resolve the disputed jurisdictional facts." Kerns 585 F.3d at 193. "[W]here the jurisdictional facts are intertwined with the facts of the merits of the dispute," the factual dispute should be resolved on the merits. Id. "[U]nless the jurisdictional allegations are clearly or wholly insubstantial and frivolous," factual disputes should be resolved "only after appropriate discovery." Id.

However, "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictoional in character." Arbaugh v. Y & H Corp., 546 U.S. 500, 515 (2006). Unless the legislature "clearly states that a threshold limitation on a statute's scope shall count as jurisdictional," the limitation is considered an element of the plaintiff's claim, not a jurisdictional issue. Id.

7

Although the Fourth Circuit has not addressed the issue, other circuits have found the FLSA's annual gross sales and enterprise coverage limitations to be nonjurisdictional in character. See e.g., Chao v. Hotel Oasis, Inc., 493 F.3d 26, 33 (1st Cir. 2007) (finding the FLSA's annual dollar volume limitation to be nonjurisdictional). Since the FLSA places the annual gross sales and enterprise coverage limitations "in the definitions section of the Act, and does not suggest that . . . [they are] jurisdictional[,]" the limitations are treated as elements of plaintiffs' claims. Id. Because the annual gross sales and enterprise coverage limitations do not affect the court's subject matter jurisdiction, to the extent defendants' seek dismissal pursuant to Rule 12(b)(1), such motion is denied.

    2. Plaintiffs' Motion to Dismiss

        a. Fraud

To state a claim for fraud under North Carolina law, a claimant must assert with particularity (1) a false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, and (5) results in damage to the injured party. Forbis v. Neal, 361 N.C. 519, 526–27 (2007). "[I]n pleading . . . fraud, the particularity requirement is met by alleging time, place, and content of the fraudulent representation, identify of the person making the representation and what was obtained as a result of the fraudulent acts or representations." Terry v. Terry, 302 N.C. 77, 85 (1981). The court turns first to the fraud claim asserted against plaintiff Wise.

According to defendant, on May 10, 2016, Wise worked the closing shift at defendants' Subway restaurant. (DE 23 ¶ 8). At close, Wise had a duty to deposit $590.38 from the day's sales. (Id. ¶ 9). However, Wise only deposited $570.00. (Id. ¶ 10). When management realized the

8

discrepancy, they confronted Wise and asked her to pay the $20.38 difference. (Id. ¶ 11). Contrary to representations Wise made to defendant Imeni, Wise never reimbursed the money. (Id. ¶ 11-12).

Defendants fail to state a claim for fraud against Wise. Defendants suggest that Wise made a false representation when she told Imeni that she would reimburse him the $20.38 she allegedly took. Although defendants assert that Wise made fraudulent representations "with intent to deceive," defendants fail to allege sufficient facts to support this conclusory assertion. Importantly, defendants do not assert that Wise knew her alleged statement regarding repayment of funds was false or otherwise recklessly made.

Furthermore, generally " an unfulfilled promises cannot be made the basis for an action of fraud," unless the promise is made "with the present intent not to carry it out." Hoyle v. Bagby, 253 N.C. 778, 781 (1961) (internal quotations omitted) ("Whatever may be the facts beyond the complaint, the pleading will be of no avail unless it sets up with sufficient particularity facts from which legal fraud arises or . . . specifically alleges the fraud- that is, the fraudulent intent- and particularizes the acts complained of as fraudulent . . . ."). "Mere proof of non-performance is not sufficient to establish the necessary fraudulent intent." Williams v. Williams, 220 N.C. 806, 806 (1942). Since defendants' claim for fraud against Wise is premised on her unfulfilled promise to reimburse $20.38, and defendant alleges no "facts from which [the] court may reasonably infer [Wise's] intent not to pay . . . existed at the time [she] made the commitment to do so," defendants' claim for fraud against Wise fails. Hoyle, 253 N.C. at 781. While these allegations may be sufficient to support a claim for conversion, they do not establish a claim for fraud. Therefore, defendants' claim for fraud against Wise is dismissed.

To support a claim of fraud against Williams, defendants allege that as supervisor, Williams was required to deposit daily revenues and supervise its employees. (DE 23 ¶ 67). According to defendants, Williams failed to perform these duties. (Id. ¶ 70). For example, rather than deposit cash received from "no tender type transactions," Williams would frequently keep money from these transactions for herself. (Id. ¶¶ 18–21). A "no tender type transaction" results when a purchase is cancelled. (Id. ¶ 17). If a customer pays in cash, "a no tender [type] transaction allows the employee to take or 'pocket' the money." (Id. ¶ 18). One month during Williams's employment, there were approximately 40 to 50 no tender type transactions at defendants' Subway restaurant. (Id. ¶ 20). According to defendants, "Williams took [revenues from] these no tender transactions and kept them [for herself,] in an amount which is still being determined." (Id. ¶ 21). Williams also frequently encouraged employees to remain clocked in when they were not working, with the intent to "inflate [employee] wages," and "reduce [defendants'] profit[s]." (Id. ¶ 25). Defendants sustained injuries from these allegedly fraudulent actions and representations. (Id. ¶ 73).

These allegations fail to state a claim for fraud against Williams. First, defendants' allegations that Williams pocketed cash from no tender type transactions does not sustain a claim for fraud. Defendants fail to assert the time and content of any alleged fraudulent misrepresentation or concealment by Williams with respect to no tender type transactions. Next, defendants' allegations that Williams encouraged other employees to remain clocked in also fails to support a claim for fraud. Defendants fail to allege with sufficient particularity the time and place of the encouragement by Williams or conduct by other employees remaining clocked in. Consequently, defendants 'claim for fraud against Williams must also be dismissed.

To the extent defendants allege claims for constructive fraud against Wise and Williams, such claims still fail. Constructive fraud "arises where a confidential or fiduciary relationship exists . . . which has led up to and surrounded the consummation of [a] transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff." Forbis v. Neal, 388/528. Constructive fraud "differs from actual fraud in that it is based on a confidential relationship rather than a specific misrepresentation." Id. (internal quotations omitted). Additionally, unlike actual fraud, intent to deceive is not an element of constructive fraud. Id.

Ordinarily, "the relation of employer and employee is not one of those regarded as confidential." Dalton v. Camp, 353 N.C. 647, 651 (2001) (internal quotations omitted). For an employment relationship to be regarded as confidential, there must be "confidence reposed on one side, and resulting domination and influence on the other." Id.

In Dalton v. Camp, the Supreme Court of North Carolina found no fiduciary relationship to exist between a general manager and his employer where no evidence established that "the employer . . . was somehow subjugated to the improper influences or domination of his employee." Id. Here, as in Dalton, defendants have alleged no facts to suggest that Williams and Wise's "position[s] in the workplace resulted in domination and influence [over defendants]." Id. Rather, plaintiffs' "responsibilities were not unlike those of employees in other businesses and can hardly be construed as uniquely positioning [them] to exercise dominion over defendants." Id. Thus, to the extent defendants allege claims of constructive fraud against Wise and Williams, such claims also fail.

### b. Unfair and Deceptive Trade Practices

The North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1 et seq., prohibits "unfair methods of competition in or affecting commerce, and unfair or

11

deceptive acts or practices in or affecting commerce." Id. To succeed under UDTPA , a plaintiff must show: "(1) the defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." Bumpers v. Cmty. Bank of N. Va., 367 N.C. 81, 88 (2013). The UDTPA "does not normally extend to run-of-the-mill employment disputes." Dalton, 353 N.C. at 656. Employees will only be liable under UDTPA when their conduct "(1) involve[s] egregious activities outside the scope of [their] employment, and (2) otherwise qualifie[s] as unfair and deceptive practices that were in or affecting commerce." Id.; see White v. Thompson, 364 N.C. 47, 53 (2010 )("[UDTPA] is not focused on the internal conduct of individuals within a single market participant . . . . To the contrary, . . . [UDTPA's] provisions . . . apply to interactions between market participants.").

Defendants' allegations fail to establish claims for unfair and deceptive trade practices against Williams and Wise. Defendants suggest that plaintiffs' conversion of funds, as well as Williams's statements to employees encouraging them to remain clocked in, constitute unfair and deceptive trade practices under UDTPA. However, plaintiffs' alleged violations of UDTPA are grounded on actions taken in contravention of plaintiffs' duties as defendants' employees. Since plaintiffs' conduct does not involve "egregious activities outside the scope of [their] employment," defendant's UDTPA claims fail. Dalton, 383 N.C. at 656.

      c. Negligence and Gross Negligence

Under North Carolina law, an individual "is liable for . . . negligence if the negligence is the proximate cause of injury to a person to who the [individual] is under a duty to use reasonable care." Hart v. Ivey, 332 N.C. 299, 305 (1992). To establish a claim for negligence, a plaintiff must establish duty, breach of duty, proximate cause, and damages. Id.

"Gross negligence" is willful or wanton conduct "done with conscious or reckless disregard for the rights and safety of others." Yancey v. Lea, 354 N.C. 48, 52 (2001). The difference between negligence and gross negligence "is not in degree or magnitude or inadvertence or carelessness, but rather is intentional wrongdoing or deliberate misconduct affecting . . . others." Id. at 53. Where ordinary negligence rests on the assumption that the defendant "should have known the probable consequences of his act," gross negligence "rests on the assumption that [the defendant] knew the probable consequences of his act, but was recklessly, wantonly, or intentionally indifferent to the results." Akzona, Inc., v. S. Ry. Co., 314 N.C. 488, 496 (1985); accord Ray v. N.C. Dep't of Transp., 366 N.C. 1, 13 (2012). "Thus, a claim for 'gross negligence' will lie where the defendant either deliberately or recklessly shirked his known duty." Garcia v. United States, No. 4:15-CV-88-FL, 2016 WL 916432, *3 (E.D.N.C. Mar. 10, 2016) (citing Akzona, 238 N.C. at 168). "An act or conduct moves beyond the realm of negligence when the injury or damage itself is intentional." Yancey, 354 N.C. at 53 (internal citations omitted).

The facts alleged in defendants' counterclaim do not state a claim for negligence or gross negligence. To support its claims, defendants assert that Williams owed it certain duties as supervisor of its Subway restaurant. Williams allegedly breached those duties by encouraging employees to remain clocked in at times they were not working.

Defendants' claims for negligence and gross negligence against Williams's are premised on intentional statements Williams made to "to reduce profit of Imeni" by encouraging other employees to remain on the clock when they were not working. (DE 23 ¶ 24). Where defendants allege that Williams intended to cause the damages it sustained, Williams's conduct cannot support a claim for negligence or gross negligence. Yancey, 354 N.C. at 53 (internal citations omitted).

13

### d. Abuse of Process and Malicious Prosecution

Abuse of process is "the misuse of legal process for an ulterior purpose." Fowle v. Fowle, 263 N.C. 724, 728 (1965). "One who uses legal process to compel a person to do some collateral act not within the scope of the process or for the purpose of oppression or annoyance is liable [for] damages in a common law action for abuse of process." Id. at 727. In North Carolina, abuse of process "requires both an ulterior motive and an act in the use of the legal process not proper in the regular prosecution of the proceeding." Stanback v. Stanback, 297 N.C. 181, 200 (1979). "[T]he ulterior motive requirement is satisfied when the plaintiff alleges that the prior action was initiated by the defendant or used by him to achieve a collateral purpose not within the normal scope of the process used." Id. The act requirement "is satisfied when the plaintiff alleges that once the prior proceeding was initiated, the defendant committed some willful act whereby he sought to use the existence of the proceeding to gain advantage of the plaintiff in respect to some collateral matter." Id.

To state a claim for malicious prosecution, a plaintiff must allege that the defendant "(1) initiated or participated in the earlier proceeding [against the plaintiff]; (2) . . . maliciously; (3) without probable cause; (4) and the earlier proceeding ended in favor of the plaintiff." Turner v. Thomas, 794 S.E.2d 439, 444 (N.C. 2016) (internal quotations omitted). If the prior proceeding was civil in nature, the plaintifff must also plead and prove special damages. Stanback, 297 N.C. at 203. Specifically, a plaintiff must allege "that there was some arrest of his person, seizure of his property, or some other element of special damage resulting from the action such as would not necessarily result in all similar cases." Id. (citing Carver v. Lykes, 262 N.C. 345 (1964)). "[I]njury . . . to reputation, embarrassment, loss of work and leisure time, and . . . [legal] expenses . . . are

insufficient to [establish] special damages." Fuhs v. Fuhs, 782 S.E.2d 385 (N.C. Ct. App. 2016) (internal citations omitted).

To support claims of abuse of process and malicious prosecution, defendants assert the following facts. Defendants employed Williams from November 30, 2014 until approximately January 10, 2016. (DE 1 ¶ 10; DE 23 ¶ 10). When Williams's employment with defendants ended, she filed a claim for unemployment. (DE 23 ¶ 26). After she initiated the unemployment claim, Williams attempted to extort money from defendants and harassed defendants' employees. Williams's unemployment claim was denied on appeal. According to defendants, Williams initiated the unemployment claim with malice, knowing that she was not entitled to unemployment benefits. (Id. ¶¶ 101–02; 106). Defendants sustained damages as a result of Williams's actions. (Id. ¶¶ 103, 110).

Defendants fail to allege sufficient facts to support a claim for abuse of process. Specifically, defendants allege no facts to establish that Williams "committed some willful act whereby [s]he sought to use the existence of the [prior] proceeding to gain advantage of [defendants] in respect to some collateral matter." Stanback, 297 N.C. at 200. Although defendants allege that Williams engaged in harassment and extortion after she initiated her unemployment claim, defendant fails to allege "an act in the use of the legal process not proper in the regular prosecution of the [unemployment claim]." Id. (emphasis added). Since the alleged extortion and harassment were not acts "in the use of the legal process," defendants lack a necessary element of an abuse of process claim. Where defendants' abuse of process claim lacks a necessary element, it must be dismissed.

Defendants' claim for malicious prosecution likewise fails. Defendants fail to set forth specific facts to establish that Williams filed her unemployment claim maliciously and without

15

probable cause. Merely asserting that Williams "instituted the proceeding with malice," and "without probable cause" is insufficient. See Twombly, 550 U.S. at 555 ("Rule 12(b)(6) . . . requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."). Thus, defendants' claim for malicious prosecution fails.

3.  Motion to Amend

Plaintiffs filed motion to file amended complaint on November 18, 2016, to which no response was made. However, in their motion, plaintiffs note that defendants object to addition of a retaliation claim. Where defendants offer no reason to deny plaintiffs' motion, pursuant to Rule 15(a)(2), and for good cause shown, plaintiffs' motion to amend is allowed.

**CONCLUSION**

Based on the foregoing, the court DENIES defendants motion to dismiss (DE 26) and GRANTS plaintiffs' partial motion to dismiss. (DE 34). Defendants' counterclaims for fraud, unfair and deceptive trade practices, negligence, gross negligence, abuse of process, and malicious prosecution are DISMISSED without prejudice. Plaintiffs' motion to file amended complaint is ALLOWED.

SO ORDERED, this the 23rd day of May, 2017.

LOUISE W. FLANAGAN
United States District Judge